Margarita LIGHTBOURN, et al.,

v.

Antonio GARZA, Jr., Secretary of State for the State of Texas.

No. EP–94–CA–299–DB.

United States District Court,
W.D. Texas,
El Paso Division.

June 10, 1996.

James Harrington, Austin, TX, Martin Coleman, Freeport, NY, for plaintiffs.

Dennis Garza, Dedra Wilburn, Assist. Attorneys General, Austin, TX, for defendant.

## FINAL JUDGMENT

BRIONES, District Judge.

On this day, the Court considered the above-captioned cause. A remedy hearing was held at which the State failed to present any alternative whatsoever to the remedy proposed by the Plaintiffs. After due consideration, pursuant to FED.R.CIV.P. 58, the Court enters this final judgment. The judgment and the findings and conclusions contained herein supplement those Findings of

Fact and Conclusions of Law entered on November 22, 1995.

This Judgment is entered against Antonio Garza, in his capacity as the Secretary of State for the State of Texas (herein "Secretary") and all his employees, agents, persons acting at his direction or request, and the Secretary's successors in office, for and on behalf of Plaintiffs and the class members, who are blind [1] voters and voters with mobility impairments in the State of Texas.

Plaintiffs filed this suit, alleging violations of the Americans with Disabilities Act ("ADA") [2] and the Rehabilitation Act of 1973,[3] ("Section 504"). Plaintiffs prevailed against the State of Texas and the Secretary after trial on liability.[4]

Notice was given to the class pursuant to earlier order of Court as to the nature and substance of the Judgment, and no class member has objected. Additionally, no class member opted out of the class or formally objected to any step or phase of this litigation. The Court is convinced that this Judgment is in the best interests of the class.[5]

## SUPPLEMENTAL FINDINGS OF FACT

1. Plaintiffs and the class members are voters in Texas.

2. Apart from the legal authority he exercises over the State's voting program [6] as its Chief Elections Officer, the Secretary, by custom and practice, also exercises considerable other, informal authority over the local election authorities throughout the State (for example, providing legal guidance, advice, counsel and training, and serving as the conduit for information about federal and state laws that have applicability of any nature to elections). This is true with regard to implementation and enforcement of both the ADA and Section 504.

3. Similarly, by virtue of his office, as well as custom and practice, the Secretary has significant persuasive power he can exercise to assure compliance with the ADA and Section 504 by local election authorities of political subdivisions throughout the State in conducting elections. The Secretary has chosen not to exercise this power.

4. The Secretary has provided limited and inadequate advice and training to local election authorities regarding implementation of Title II of the ADA insofar as it pertains to the State's voting programs and services. The Secretary presented no evidence that he ever attempted to provide advice or training to local election authorities regarding implementation of Section 504 insofar as it pertains to the State's voting programs and services.

5. The Secretary did not conduct a self-evaluation of the State's voting program and the effects of current policies and practices, statewide and by

---

1. "Blind" includes persons who possess severe visual impairments. Likewise, "mobility-impaired" includes those persons who require a wheelchair, walker, braces, crutches or the assistance of others in getting around. The impairments may be as a result of accident, because of age or since birth.

2. 42 U.S.C. § 12101 *et seq.*

3. 29 U.S.C. § 791 *et seq.*

4. At the liability phase of this trial, it was this Court's conclusion that the ADA and Section 504 apply to elections. This issue was, as the Court noted in its November opinion, central to the case. Counsel has apparently misunderstood the import of this finding; until such time as this decision is overturned on appeal, this issue is resolved as a matter of law. Perhaps this misunderstanding explains the Secretary's failure to submit a proposed remedy.

5. The Court notes that a class member may essentially "opt out" of the class at any time by choosing not to use any of the remedies effectuated by this decree, and choosing instead to vote according to the current options available, which will continue in effect in addition to this judgment. Similarly, nothing in this decree prevents any class member from proceeding on their own against local election officials for non-compliance with Section 504 or the ADA.

6. "Program," in this Judgment includes "program," "services," and "activities," as those terms are used in the ADA and Section 504.

local election authorities, pursuant to the ADA or Section 504, to determine if they met the requirements of 28 C.F.R. § 35.105(a) and its counterpart Section 504 regulations, with regard to access to the secret ballot by mobility-impaired voters and blind voters, whether for primary, general, or special elections.

6. The Secretary failed to provide an opportunity to interested persons, including individuals with disabilities and organizations representing individuals with disabilities, to participate in such a self-evaluation process pursuant to 28 C.F.R. § 35.105(b).

7. The Secretary failed to prepare or encourage the preparation of a transition plan where necessary, by his office or by local election authorities, pursuant to the ADA, with respect to mobility-impaired voters and blind voters.

8. Even though, by law, the Secretary funds the election day expenses for political primaries (currently in the range of $10–$12 million), he has not conducted a self-evaluation, pursuant to ADA or Section 504, with regard to mobility-impaired voters and blind voters, in primary elections.

9. The Secretary has not prepared, or assured the preparation of, a transition plan where necessary, pursuant to the ADA, with respect to mobility-impaired voters and blind voters, in primary elections.

10. The Secretary has substantial powers to investigate abuses of the rights of Texas voters and to eradicate such abuses where found.

11. Despite having such powers and despite knowledge of continued abuses of the voting rights of disabled Texans since the passage of the ADA and the Rehabilitation Act of 1973, the Secretary has inadequately utilized his powers to eradicate discrimination against disabled voters.

12. Substantial abuses of the rights of disabled voters have existed in Texas historically, and continue to exist to this day. Included among those rights are the rights of significant numbers of mobility-impaired Texans to adequately access individual polling sites, and the right of blind Texans to vote by private and secret ballot.

13. The Secretary has failed to explore the possibility of ADA and Section 504 compliance with reasonable modifications and accommodations in existing voting systems and mechanisms for persons with mobility impairments or who are blind.

14. With regard to primary elections, the Secretary permits political parties to choose and use polling sites that are inaccessible to persons with disabilities and permits them to choose and use elections systems that do not provide a secret ballot for persons who are blind.

15. Despite having the sole authority to do so, the Secretary has never established or required the use of any ADA or Section 504 criteria by statutory examiners evaluating and certifying voting systems in Texas in order to preserve secrecy of the ballot for blind voters.

16. Despite having the ability and authority to do so, the Secretary has never established or required the use of any criteria by statutory examiners in approving election balloting systems that would facilitate and assure use of the secret ballot by mobility-impaired voters, and especially by blind voters.

17. Despite having the ability and authority to do so, the Secretary has not undertaken any effort to encourage the commercial development of voting systems for blind persons, or to modify other systems in order to accommodate blind persons.

18. The Secretary has undertaken no effort to encourage development of voting systems for blind persons, or to modify other systems, to preserve the secrecy of their ballot.

714

19. Because of the Secretary's failures, noted above, there is no balloting system in use at this time anywhere in the State that assures blind persons the right to cast a secret ballot.

20. The Secretary's proffered and recommended accommodation for voters who are blind, namely, assistance by another in reading aloud and marking the ballot, often results in embarrassment and sometimes humiliation for blind voters and results in discouraging them from exercising the franchise, and denies them the right to secrecy of the ballot.

21. Although having the ability and authority to do so, the Secretary has never commenced any enforcement action against parties or entities that provide inaccessible polling places to voters who have mobility impairments, even though he is aware of many such inaccessible polling sites.

22. The record shows widespread noncompliance throughout Texas with the physical accessibility requirements of the ADA and Section 504 so that persons with mobility impairments generally are impeded and discouraged from exercising their right to vote.

23. The Secretary has not undertaken any systematic follow-up action to encourage making such non-conforming polling places accessible to mobility-impaired persons.

24. The Secretary's failures, noted above, perpetuate discrimination by local election authorities in the State's voting program with regard to mobility-impaired voters and blind voters, by ignoring his statutory duty to provide them with guidance in uniformly implementing Title II of the ADA.

25. Prior to the filing of this case, neither the Secretary nor his designee had ever raised or claimed the defense of undue burden or fundamental alteration under the ADA in a written statement, as required by federal ADA regulations. Nor did the Secretary, in declining to modify the program to preserve secrecy of the ballot for blind voters, consider all reasonable resources available for use in funding and operating the State's voting program. 28 C.F.R. § 35.150(a)(3).

26. The Secretary has discriminated, and continues to discriminate, against Plaintiffs and members of the class on the basis of their disabilities.

27. The Secretary has failed, and continues to fail, to reasonably accommodate Plaintiffs and the class members, and their disabilities, in the exercise of the franchise and secret ballot.

28. The Secretary has failed, and continues to fail, to make reasonable modifications and accommodations in the State's voting program for Plaintiffs and the class members, thereby effectively precluding them from the total enjoyment of the franchise and secret ballot.

## SUPPLEMENTAL CONCLUSIONS OF LAW

1. The Court has jurisdiction over the case, and this case is ripe for review.

2. Plaintiffs and the class members are qualified persons who have disabilities, records of disabilities, and/or are regarded as having disabilities, as those terms are defined by the ADA and Section 504.

3. Defendant Secretary is a public entity, subject to Title II of the ADA and Section 504.

4. Title II of the ADA and Section 504 are federal laws that affect elections in Texas. Both laws are broader than the Voting Rights Act of 1985 and, as such, supersede that Act to the extent that it conflicts with either the ADA or Section 504. The same is true with regard to the Texas Elections Code.

6. The right to cast a secret ballot is a fundamental constitutional right in Texas, and the Secretary, as Chief Elections Officer for the State, oversees the voting program that assures

and effectuates that right, which is an intrinsic part of the voting program in Texas.

7. The Secretary has joint responsibility with the State's local election authorities in assuring compliance with the ADA and Section 504 in conducting elections.

8. The voting program conducted by the Secretary includes: examination, inspection, and approval of voting systems; preparation of software; duty to maintain uniformity in application of Title II of ADA; duty to protect voters with disabilities from impediments to free exercise of voting rights with regard to the secret ballot; funding of primary elections; and provision of funding for voter registration activities. 28 C.F.R. § 102(a).

9. With regard to party primaries, the Secretary allows the political parties to select polling sites that have the effect of excluding individuals with disabilities from participating in, or enjoying the benefits of, the State's voting program, and subjecting them to discrimination, with the effect of substantially impairing the accomplishment of the State's voting program with respect to persons who have disabilities. 28 C.F.R. § 35.130(b)(4)(i)–(ii).

10. The Secretary has the duty to ensure uniform application, operation, and interpretation of Title II of the ADA with respect to local election authorities in Texas. He may not, directly or through contractual or other arrangements, utilize criteria or methods of administration that perpetuate the discrimination of another public entity, if both agencies are subject to common administrative control or are agencies of the same State. 28 C.F.R. § 35.130(b).

11. The Secretary administers a licensing and certification system, namely, for approving voting systems to be used by local election authorities, which illegally subjects persons who are blind

to discrimination because of their disability. 28 C.F.R. § 35.130(b)(6).

12. The Secretary's proffered and recommended accommodation for voters who are blind, namely, assistance by reading aloud and marking the ballot, is not a reasonable modification of his policies, practices, or procedures, as required by the ADA to avoid discrimination on the basis of disability, by his prior approval of voting systems, despite the fact that they failed to provide secrecy of the ballot for blind voters while providing secrecy of the ballot for all other voters. 28 C.F.R. § 35.130(b)(7).

13. The Secretary does not afford blind voters and/or mobility-impaired voters an equal opportunity to participate in, or benefit from, the State's voting program that is equal to that accorded voters who are not disabled.

14. Modification of the current policies, practices, and procedures that result in the denial of the secrecy of the ballot for blind voters would not cause a fundamental alteration in the nature of the State's voting program. There is absolutely no requirement that the method by which sighted and non-handicapped Texans vote change in any way. Rather, a reasonable modification would further the participation in, and benefit from, such program by blind voters.

### Conclusion

It is the Court's intention to have an ADA-compliant voting system in place for the next national election in the year 2000. Since the landmark voting rights cases of the 1960's, there have been sweeping changes in the conduct of elections in this state. In the case-at-bar, the group seeking protection from polling place discrimination is relatively small, but the size or nature of a group does not affect the individual civil rights of that group; that is the American experience.

To this end, and at the specific request of the Secretary, the Court has greatly extended the deadlines for compliance. The deadlines contained herein should be more than

sufficient to accomplish the elimination of discrimination on the part of the Secretary. This Order also includes a great deal of leeway with regard to both time and method of implementation.

Finally, it should be noted that the Court has jurisdiction only over the Secretary in this case. Therefore, only those matters over which the Secretary has direct control are addressed. The ruling of this Court does not directly burden local election officials. However, the Court does acknowledge that, as in many other cases, changes at the top will work changes at the bottom. This holding will, among other things, remove a major impediment to a local voting authority seeking to comply with the ADA, namely the failure of the Secretary to approve an ADA-compliant system.

Accordingly, it is **ORDERED, ADJUDGED, and DECREED** as follows:

A. The Secretary, after December 31, 1996, shall approve no new voting system that is not ADA-accessible and does not preserve secrecy of the ballot for blind voters. ADA criteria, including secrecy of the ballot for blind voters, shall be devised by the Secretary, promulgated in the Texas Administrative Code, and distributed to voting systems examiners and vendors for use in evaluating voting systems. Such standards shall be specific in all particulars.

In addition, the Secretary shall send a letter to all vendors of voting systems in Texas approved in the last five years, informing them that no new or modified voting systems will be approved that are not ADA-accessible and that do not preserve secrecy of the ballot for blind voters.

B. The Secretary shall prepare detailed and comprehensive written directives, guidelines, and instructions, as appropriate, relating to, and based, on Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131(A), and its implementing regulations contained in 28 C.F.R. Part 35, and, within eighteen months of the date of this judgment, distribute these directives, guidelines, and instructions to all local authorities performing official functions in the administration of the State's voting program, including, but not limited to, all the counties, political parties, school districts, municipalities, and special districts of the State. These directives, guidelines, and instructions will include, but are not limited to:

1. Guidelines and instructions that voting systems purchased after December 31, 1997, must be accessible, as required by the ADA, to mobility-impaired voters and blind voters (included in this directive will be an explicit instruction that voting systems must preserve secrecy for blind voters).

2. Guidelines and instructions that on or before December 31, 1998, current voting systems must be modified and made accessible, as required by the ADA, to mobility-impaired voters and blind voters (included in this directive will be an explicit instruction that voting systems must preserve secrecy for blind voters).

3. Guidelines and instructions that all voting systems in the State of Texas must be accessible, as required by the ADA, to mobility-impaired and blind voters on or before December 31, 1999, (included in this directive will be an explicit instruction that voting systems must preserve secrecy for blind voters).

C. The Secretary shall submit all proposed directives, guidelines, and instructions contained in Sections A and B above, to the Court for review within twelve months of the date of this Judgment.

D. The Secretary shall devise a system of systematically monitoring ADA and Section 504 compliance by local election authorities in the administration of their and the State's voting program. An annual report detailing compliance of local election authorities shall be delivered, on the anniversary date of this Judgment, to the Court throughout the duration of this Judgment.

E. Nothing in this order shall derogate defenses which individual election authorities may have under the ADA and Section 504, particularly the defense of undue burden, as to implementation of any ADA modification or accommodation for persons with disabilities. Nor shall anything in this order alter

the legal obligation of election authorities with regard to making their voting programs accessible to persons with disabilities and to prevent discrimination against persons with disabilities, as required by the ADA and Section 504.

F. The Court shall maintain jurisdiction over this Judgment for all enforcement purposes until the Judgment is complied with. This Judgment will bind the Secretary's successors in office, as well as all agents, employees, and those acting at the Secretary's direction or on his behalf.

SO ORDERED.